IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Kevin Leon Dawson, | ) | C/A No.: 3:11-700-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Erik K. Shinseki, Secretary, Veterans Affairs, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, the *pro se* plaintiff, Kevin Leon Dawson

("Plaintiff"), a former employee of the Department of Veterans Affairs ("VA"), is suing

Erik K. Shinseki in his capacity as the Secretary of Veterans Affairs ("Defendant").

Plaintiff alleges claims of discrimination under (1) Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), (2) the Age Discrimination and

Employment Act of 1967, 29 U.S.C. §§ 621, et seq. ("ADEA"), and (3) the

Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq. ("Rehabilitation Act"). Plaintiff's

Complaint may also be liberally-construed to allege a violation of the Health Insurance

Portability and Accountability Act ("HIPAA"), as well as state law defamation claims.

This matter comes before the court on Defendant's motion to dismiss or, in the

alternative, for summary judgment filed August 4, 2011 [Entry #18]. On August 5, 2011,

the court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),

notifying Plaintiff of the summary dismissal procedure and possible consequences if he

failed to adequately respond to the motion to dismiss/for summary judgment [Entry #19].

Plaintiff's response to the motion was filed on September 8, 2011 [Entry #21]. This matter having been fully briefed, it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion to dismiss/for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Defendant's motion and dismiss Plaintiff's Complaint in its entirety.

I.      Factual and Procedural Background

On July 19, 2009, Plaintiff was hired by the VA in Columbia, South Carolina as a Veterans Service Representative. *See* Notification of Personnel Action [Entry #18-2]. Plaintiff's appointment was subject to a one-year initial probationary period beginning on July 19, 2009. *Id.*

On April 6, 2010, Plaintiff was terminated during his probationary period. *See* April 6, 2010 VA Memorandum [Entry #18-3]. Pursuant to the termination memorandum, the reason for Plaintiff's termination was as follows:

> On April 6, 2010, in a telephone conversation with a veterans' service organization representative, you made a statement regarding problems that you had with the VA and the military. During the conversation, you stated that you knew why Timothy McVeigh did what he did.

*Id.* at p. 1. The termination memorandum advised Plaintiff that if he believed the termination was based on discrimination because of his race, religion, sex, national origin, age or disability, he could file a complaint with the VA in accordance with Equal

Employment Opportunity ("EEO") standards or raise the issue in connection with an appeal to the Merit Systems Protection Board. *Id.* at p. 2.

On April 7, 2010, Plaintiff contacted the Office of Resolution Management ("ORM") at the VA. *See* Initial Contact and Interview Sheet [Entry #18-4]. He provided his name and home address to the counselor. *See id.* at p. 1. As is noted on the Initial Contact and Interview Sheet, the reason for Plaintiff's contact with the ORM counselor was his termination on April 6, 2010. *Id.* The alleged discriminatory grounds for the termination are listed as "Age (Specify) – 06/07/1960, American National orig, Color (Specify), Disability – Mental, National Origin – Other (Specify), Race – Black, Religion (Specify), Reprisal, Sex – Male." *Id.* In the section of the Initial Contact and Interview Sheet entitled "How have you been harmed?", the response states, "Terminated, humiliated, HIPPA rights violated, family has been burdened, became homeless." *Id.* at p. 2.

The ORM sent Plaintiff a certified letter ("Letter") on April 30, 2010, setting forth a summary of Plaintiff's discrimination claim and asking him to notify the ORM within 5 days if the claim summary was incorrect. *See* Letter dated 4/30/10 from ORM [Entry #18-5]. The Letter provided that informal counseling on the matter was being closed. *See id.* The Letter enclosed two copies of the Notice of Right to File a Discrimination Complaint ("Notice"), a blank VA form 4939 "Complaint of Employment Discrimination," and notified Plaintiff that he had fifteen calendar days from receipt of the Notice to file a formal complaint with the ORM. *See id.* The Notice likewise stated, "**If you decide to file a formal complaint, you must do so WITHIN FIFTEEN**

**CALENDAR DAYS OF RECEIPT OF THIS NOTICE.**" *Id.* at p. 3 (emphasis in original). The Notice went on to provide, "**Please note that the <u>15-calendar day</u> time frame will not be extended due to your need to seek my assistance in completing this form.**" *Id.* (emphasis in original). The April 30, 2010 Letter and Notice were sent to the address Plaintiff provided during the initial interview telephone call on April 7, 2010. The certified mail receipt was executed by "LaVeda Daniels" as "agent" on May 3, 2010. *See* Certified Mail Receipt [Entry #18-7].

The ORM EEO counselor issued a "Counselor Report" [Entry #18-6] on May 4, 2010. In his report, the counselor indicated that numerous attempts to contact the Plaintiff by telephone and email during the month of April, 2010, had been unsuccessful. Because the counselor was unable to reach the Plaintiff, he sent the Letter dated April 30, 2010, referred to as "The Notice of Unreachable," along with the Notice of Right to File a Discrimination Complaint and VA form 4939 to Plaintiff by certified mail. *Id.* at p. 3.

Despite the ORM's difficulties contacting Plaintiff, it appears the VA did complete further investigation into Plaintiff's claims. A telephone statement of Plaintiff's supervisor, Marisol Rice, dated June 22, 2010, provided additional information regarding Plaintiff's termination. *See* Telephone Statement [Entry #21-9 at p. 3]. The statement provides the following:

> He was terminated due to a conversation he had with an individual and he made statements regarding the military and the VA. In those statements he made reference to Timothy McVay [sic] and we have zero tolerance for work place violenec [sic]. He was a probationary employee until 09/30/10. We felt like he did not have the general characteristics to the job. No futher [sic] information available.

*Id.*

4

On November 3, 2010—six months after the April 30, 2010 Letter and Notice were delivered to Plaintiff's residence—Plaintiff faxed a completed Complaint of Employment Discrimination ("CED") to the VA ORM. *See* Complaint of Employment Discrimination [Entry #18-8]. The instructions on the CED require the complainant to list the basis (i.e., race, color, religion, sex, national origin, age, disability, and reprisal for prior EEO activity or having opposed discrimination) for each alleged discriminatory practice. Plaintiff's CED does not assert any discrimination based upon being a member of a protected class. *See id.* Instead, Plaintiff identified the basis of his complaint as "betrayal, mismanagement, and bullying by my former employer, the Veterans Benefit Administration (VBA) #319, led to the exacerbation of my medical conditions." *Id.* at p. 2.

Plaintiff went on to describe an allegedly hostile work environment related to problems he had correcting his allegedly incorrect service computation date. *Id.* Plaintiff claimed that his service computation date was incorrect beginning in 2008 while he was employed with the Defense Service Commissary, Elmendorf Air Force Base, Alaska, persisted during his employment with the Department of Defense Provost Marshall, Fort Leonard Wood, Missouri, and continued while employed with the VA in Columbia, South Carolina. *Id.* In the discussion of his claims, Plaintiff alleged "(1) Discriminatory Harassment, (2) Libel and slander by a government agent or employee in the course of their duties (3) and the commission of a crime crossing state lines, all major felonies according the U.S.C. (United States Codes—laws)." *Id.* at p. 3. Other than his

discussion related to the alleged hostile work environment, Plaintiff did not provide any explanation as to the grounds for these alleged legal claims.

On December 21, 2010, the VA ORM sent Plaintiff a Notice of Final Agency Decision of EEO Complaint No. 2001-0319-2010102694, Filed on November 3, 2010 ("FAD") [Entry # 18-9]. The FAD identified and addressed three claims based upon Plaintiff's CED.

The first claim, raised during Plaintiff's initial interview with the ORM on April 7, 2010, alleged discrimination of disparate treatment based on age, color, disability, national origin, race, religion, reprisal, and sex. *Id.* at p. 1. The VA found this claim untimely because Plaintiff's formal complaint was not filed within the 15-calendar day time set forth by 29 C.F.R. § 1614.107(a)(2). *Id.* at p. 3. Based upon the date on the certified mail receipt, the VA calculated Plaintiff's filing deadline as May 18, 2010. The VA found he did not fax his complaint to the VA until November 3, 2010—169 days beyond the applicable time limit. The FAD noted that in the attachments to Plaintiff's formal complaint, he had provided information (concerning a change in address with the Postal Service) in an attempt to explain why he did not file the complaint in a timely manner. *Id.* The VA found the reasons Plaintiff offered to be insufficient to waive the applicable time limit requirements and it dismissed his claim. *Id.*

The second and third claims addressed by the FAD were based on two alleged hostile work environment events raised in Plaintiff's CED. *Id.* at p. 1. The first event was an ongoing issue related to problems Plaintiff allegedly experienced while trying to have his service computation date corrected. *Id.* The second event apparently occurred

in September–October 2010 when Plaintiff alleges a Human Resources representative told the Employment Commission of South Carolina "lies as to why" he was terminated by the VA. *Id.*

The VA dismissed the hostile work environment claims pursuant to EEOC regulation 29 C.F.R. § 1614.107(a)(2), which requires dismissal of claims that raise matters that have not been brought to the attention of the ORM counselor and are not like or related to a matter that has been brought to the attention of the counselor. *Id.* Plaintiff did not raise either event during the counseling period and the VA found that neither event was "'like or related' or inextricably intertwined with the issue described in the original complaint." *Id.* at p. 2. The VA further held that even if the event occurring in September–October 2010 "could have potentially 'grown out of the original complaint,' the EEOC has generally ruled that an allegation of a management representative 'lying' while in opposition to a state unemployment claim constitutes a 'collateral attack' on that process and, as such, does not state a claim of EEO discrimination." *Id.*

The FAD set forth Plaintiff's appeal rights, including filing a civil action in the appropriate United States District Court "within 90 days of receipt of this final decision if no appeal to EOOC has been filed." *Id.* at p. 5.

Plaintiff timely filed the Complaint in this action in the United States District Court for the Eastern District of Missouri on March 17, 2011. Finding that venue was proper in the District of South Carolina, the Eastern District of Missouri transferred the case to this district on March 23, 2011 [Entry # 6].

II.    Discussion

A.    Standard of Review

Defendant filed a motion to dismiss/for summary judgment, which has been fully briefed.  As both parties submitted matters outside of the pleadings, the motion is being treated as one for summary judgment.

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972), and *Haines v. Kerner*, 404 U.S. 519 (1972). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine dispute of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

B.     Analysis

Defendant contends that summary judgment is appropriate because Plaintiff failed to exhaust all administrative remedies prior to filing his federal action. Plaintiff's Complaint and attached narrative assert claims pursuant to (1) Title VII, (2) the ADEA, (3) the Rehabilitation Act, (4) HIPAA, and (5) state law defamation claims.[1] The undersigned addresses each claim seriatim.

---

[1] In his Complaint, Plaintiff checked the boxes complaining of the following allegedly discriminatory conduct: termination of employment, failure to promote, terms and conditions differ from those of similar employees, retaliation, and harassment. [Entry #1 at ¶ 10]. Plaintiff, however, has not presented evidence in support of all of the complained-of conduct. The undersigned liberally reads the Complaint and attached narrative to assert wrongful discharge and hostile work environment claims. To the extent Plaintiff's Complaint and attached narrative may be read to assert additional claims under Title VII, the ADEA, or the Rehabilitation Act, such claims are barred by Plaintiff's failure to exhaust administrative remedies discussed *infra*.

1.    Title VII Claims

Title VII provides the exclusive remedy for discrimination claims in federal employment and outlines the procedures by which an aggrieved person may seek relief from unlawful discrimination.  *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 835 (1975). While Title VII creates a right of action for employees alleging discrimination, federal employees must exhaust their administrative remedies before exercising this right.  *Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006).  "Timely invocation of this administrative review process is a prerequisite to seeking a judicial remedy."  *Barr v. U.S Marshals Serv.*, No. 3:05-1208-CMC-JRM, 2007 WL 2579399, at *4 (D.S.C. Sept. 4, 2007) (citing 29 U.S.C. § 749(a)(1)).

To initiate this administrative review process, an aggrieved individual must contact an EEO counselor within the employing agency within 45 days of the alleged discriminatory act or, in the case of personnel action, within 45 days of the effective date of the action.  29 C.F.R. § 1614.105(a)(1).  If the matter is not resolved during EEO counseling, the agency will issue a notice of right to file a formal complaint with the agency within 30 days of the initial contact from the complainant.  29 C.F.R. § 1614.105(d).  The complainant must file a formal complaint within fifteen days of the agency's issuance of the notice.  29 C.F.R. § 1614.106(b).  The agency then considers the complaint, and once an agency issues its final decision on the complaint, an aggrieved party may, inter alia, file suit in federal court.  29 C.F.R. § 1614.110(b).

a.    Hostile Work Environment Claims

In the attachments to Plaintiff's Complaint, he discusses the same two alleged hostile work environment events raised for the first time in his formal complaint with the VA.  Plaintiff alleges he was subject to a hostile work environment related to the VA's alleged failure to correct his service computation date beginning in July 2009 and continuing through his termination on April 6, 2010 ("HWE Claim 1").  *See* Compl. at pp. 6–8 [Entry # 1].  Plaintiff further alleges that in October 2010 his employer gave false statements to "numerous elected government officials that contacted the VBA #319 on my behalf pertaining to my SF50" and to the "South Carolina Employment Commission regarding my termination" ("HWE Claim 2").  *Id.* at pp. 8–9.

Pursuant to 29 C.F.R. § 1614.107, an agency addressing a formal EEOC complaint must dismiss the entire complaint if the complaint "raises a matter that has not been brought to the attention of the Counselor and is not like or related to a matter that has been brought to the attention of a Counselor."  29 C.F.R. § 1614.107(a)(2).  The Initial Contact and Interview Sheet [Entry #18-4] documents that Plaintiff did not raise HWE Claim 1 with the ORM counselor as required by 29 C.F.R. § 1614.105(a)(1).  Nor did Plaintiff contact a counselor with regard to HWE Claim 2.[2]  Consequently, the issue with

---

[2] Pursuant to the administrative procedure set forth in 29 C.F.R. § 1614.105, Plaintiff had 45 days from the date of the alleged discriminatory incident to contact an EEO counselor within the VA.  Plaintiff was aware of this requirement based on his prior experience with the ORM.  [Entry #18-3].  Nevertheless, Plaintiff made no such complaint regarding the alleged hostile work environment claim stemming from the October 2010 incident(s).

regard to these claims is whether the claims were "like or related to" the issues Plaintiff raised with the counselor on April 7, 2010.

Plaintiff's initial complaint to the ORM counselor was strictly a wrongful termination charge.  Hostile work environment claims are separate and distinct from wrongful termination claims and, as such, do not relate back to the issues Plaintiff previously brought to the attention of the counselor.  *See, e.g., Showalter v. Weinstein*, 233 Fed. Appx. 803, 806 (10th Cir. 2007).  Furthermore, the facts underlying HWE Claim 1 in no way relate to the reason for Plaintiff's termination, which was predicated solely on his statement regarding Timothy McVeigh.  *See* Telephone Statement [Entry #21-9 at p. 3].

Even if Plaintiff's hostile work environment claims were considered to be like or related to the issues he raised with the ORM counselor, his hostile work environment claims fail on the merits.  In order to establish a hostile work environment claim, a claimant must demonstrate that the alleged conduct: (1) was unwelcome; (2) resulted because of his race, religion, color, gender, or age; (3) was "sufficiently severe or pervasive" to alter the conditions of his employment; and (4) was imputable to his employer.  *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 338 (4th Cir. 2003) (en banc).

While the first element is subjective, the rest of the test is comprised of objective components based on a "reasonable person" standard.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted).  To prove the second element, "a plaintiff must show that 'but for' the protected characteristic, he would not have been a victim of harassment."  *Shivers v. S.C. Dept. of Corrections*, No. 3:09-3357-

MBS-JRM, 2011 WL 4549261, at *8 (D.S.C. Sept. 30, 2011) (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998)).  As for the third element, harassment is considered sufficiently severe or pervasive to alter the terms or conditions of the employment if a workplace is "permeated with discriminatory intimidation, ridicule, and insult."  *Harris*, 510 U.S. at 21 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (internal quotation marks omitted)).

Plaintiff has made no allegations tying either hostile work environment claim to his race, religion, color, gender, or age.  He likewise has made no allegations suggesting any severe or pervasive discrimination in the workplace.

For these reasons, Plaintiff's hostile work environment claims fail and it is recommended that they be dismissed.

b.    Wrongful Discharge Claim

Plaintiff's initial claim to the ORM was for wrongful discharge allegedly based on his race, religion, color, gender, and age.  Although Plaintiff contacted the ORM counselor within 45 days of his termination, he failed to file his formal complaint within 15 days of receipt of the agency's Notice of Right to File a Formal Complaint.  The Notice was delivered to Plaintiff's address of record on May 3, 2010, making May 18, 2010 his deadline for filing a formal complaint.  Plaintiff did not file his formal complaint until November 3, 2010—169 days after the filing deadline had passed.  Defendant seeks dismissal of Plaintiff's claims on the grounds that Plaintiff failed to comply with administrative procedures.

"A total failure to comply with the available administrative remedies serves as a jurisdictional bar to a suit in this court; however, failure to timely comply with the available administrative remedies requires a separate analysis of whether equitable estoppel or tolling should excuse Plaintiff's failure, as discrimination suits against the government are subject to equitable tolling principles." *Barr*, at *4 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 111 (1990)).   Generally, when an employee fails to timely comply with the administrative filing deadlines, the failure is forgiven only if "(1) the government should be equitably estopped from asserting the time bar, (2) the time for filing should be equitably tolled, or (3) plaintiff did not know about the time requirement." *Id.* (citing *Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992)).

(i)     Equitable Tolling

"Equitable tolling is a narrow limitations exception," which the Fourth Circuit has applied sparingly, mindful that it "always has the potential of becoming the exception that swallows up the congressional rule."  *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir. 1990).  "A review of the case law reveals that, equitable tolling ordinarily is applied in cases where the employer has knowingly and intentionally caused the plaintiff to miss the deadline."  *Reed v. South Carolina State Univ.*, 5:08-3022-MBS, 2010 WL 3730907, at *5 (D.S.C. Sept. 20, 2010) (citing *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (holding equitable tolling applies where the employer "has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action"); *Weick v. O'Keefe*, 26 F.3d 467, 470 (4th Cir. 1994) (holding equitable tolling

14

justified where employer's "deliberate misconduct had lulled [the claimant] into inaction")).

Plaintiff has not alleged that the VA intentionally misled him into filing his formal complaint after the deadline had passed.  On the contrary, the ORM sent the Notice of Right to File a Formal Complaint to the address that Plaintiff concedes he provided to the counselor during the initial interview.  *See* Resp. Br. [Entry #21 at ¶ 9].  Thus this is not a case in which the equitable tolling exception excuses Plaintiff's failure to comply with the administrative remedies procedure.

(ii)    Equitable Estoppel

"[E]quitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline."  *English*, 828 F.2d at 1049 (citations omitted).  Like equitable tolling, equitable estoppel is used only sparingly and is "reserved for only the most deserving complainants."  *Thomas v. Univ. of South Carolina*, No. 3:04-0628-MBS, 2006 WL 2521592, at *4–5 (D.S.C. Aug. 31, 2006) (quoting *Polsby v. Chase*, 970 F.2d 1360, 1363 (4th Cir. 1992)).  To establish equitable estoppel in this case, the Plaintiff must establish "affirmative conduct on the part of the government."  *Olson*, 904 F.2d at 201.  Such misconduct usually exists "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  *Irwin*, 498 U.S. at 96.  However, equitable estoppel against the government is strongly disfavored.  *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422–23 (1990) ("leav[ing] for another day whether an estoppel claim could ever succeed against the Government," but observing

15

that "we have reversed every finding of estoppel [against the Government] that we have reviewed").

Plaintiff has presented no evidence to demonstrate the government induced him to miss the deadline. Consequently, Plaintiff's failure to comply with the deadline is not excused by the equitable estoppel exception.

(iii)    Plaintiff's Knowledge of the Time Requirement

While not overtly stated, Plaintiff appears to contend that his delay in filing his formal complaint is excused by the fact that he did not personally sign the certified mail receipt upon delivery of the April 30, 2010 Letter and Notice. Plaintiff admits in his Response brief that the Letter and Notice were sent "to the address the Plaintiff supplied them with," Resp. Br. [Entry #21 at ¶ 9], but goes on to state that the "United States Postal Service personnel allowed someone other than the Plaintiff to sign and receive the Certified Mail."[3] *Id.* at ¶ 10. Plaintiff does not deny having received the Letter/Notice, but only complains "the EEOC failed to recognize the proper deliverance and receipt of register mail had not taken place in correspondence that they had mailed to me and I never received nor signed for upon deliverance form [sic] the United State Postal worker." Compl. [Entry #1 at p. 9].

---

[3] In an attempt to justify and explain his filing delay, Plaintiff has provided the court with a letter from a manager within the United States Postal Service dated August 13, 2010. *See* Letter dated 8/13/10 [Entry #21-8]. The letter describes how Plaintiff's change of address from Anchorage, Alaska, to Hazelwood, Missouri, and subsequently back to Anchorage may have affected his receipt of mail addressed to the Hazelwood address. The letter provided by Plaintiff is irrelevant to the court's analysis because the certified mail receipt verifies that the Notice was received at Plaintiff's Hazelwood address.

A letter sent via certified mail need not be signed by the complainant for the clock to start running on EEO administrative deadlines.[4]  In *Lewis v. Potter*, No. 6:9-750-HFF-WMC, 2009 WL 4823893 (D.S.C. Dec. 14, 2009), an employee of the United States Postal Service filed suit against his employer alleging claims under Title VII and the Rehabilitation Act.  Defendant sought dismissal of the claims based on the plaintiff's failure to timely file his appeal of the final agency decision to the EEOC during the administrative process.  *Id.* at *2.  The plaintiff argued his delay in filing was a result of the Notice of Final Action being mailed to his mother's address in Anderson, South Carolina, rather than to his address in Greenville, South Carolina.  *Id.* at *3.  According to the plaintiff, his mother signed for the letter, but did not open it or deliver it to him.  *Id.* The defendant noted that the Anderson address was the plaintiff's address of record with the EEOC, that all documents from the EEOC were mailed to the Anderson address, that the plaintiff was reminded in several EEOC documents of his obligation to notify the EEOC if he changed his address, and that there was no evidence that the plaintiff ever notified the EEOC of a change of address.  *Id.* at *3–4.  The court was not persuaded by the plaintiff's attempts to excuse his delay in filing and ruled the plaintiff had failed to exhaust his administrative remedies.  *Id.* at *5.

In this case, the certified mail receipt shows the Notice of Right to File a Discrimination Complaint was delivered to and signed for at 350 Avant Dr. in Hazelwood, Missouri on May 3, 2010.  *See* Certified Mail Receipt [Entry #18-7].

---

[4] The undersigned notes that service of the Letter/Notice was in compliance with acceptable means provided in Fed. R. Civ. P. 5(b)(2) ("leaving it . . . at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there").

Plaintiff provided the Hazelwood, Missouri address to the ORM counselor on April 7, 2010.  *See* Initial Contact and Interview Sheet [Entry #18-4].  There is no evidence that Plaintiff ever notified the ORM of a change of address prior to the mailing of the Notice on April 30, 2010.  In fact, Plaintiff did not even submit a change of address form to the United States Postal Service until July 16, 2010, well after the Notice was sent to the Hazelwood address.  *See* Letter dated 8/13/10 [Entry #21-8].  Consequently, Plaintiff is deemed to have received the Notice for purposes of calculating his deadline to file a formal complaint.

Because Plaintiff failed to timely file his formal complaint and the facts presented do not justify the extension of the filing deadline, it is recommended that Plaintiff's Title VII claims be dismissed for failure to exhaust administrative remedies.

### 2.    Rehabilitation Act Claim

The Rehabilitation Act expressly incorporates the "remedies, procedures and rights" of Title VII.  *See* 29 U.S.C. § 794a(a)(1).  Among the incorporated remedies and procedures is the requirement that an aggrieved employee exhaust his available administrative remedies prior to filing suit in federal court.  For the reasons set forth in support of the dismissal of Plaintiff's Title VII claims, it is likewise recommended that Plaintiff's claim under the Rehabilitation Act be dismissed for failure to exhaust administrative remedies.

### 3.    ADEA Claim

Plaintiff's final discrimination claim is brought pursuant to the ADEA.  There are two means by which a complainant may proceed under the ADEA: he may file a

complaint with the EEO and follow the procedures outlined in the discussion of Plaintiff's Title VII claims, *supra*, or he may file a civil action in federal district court pursuant to 29 U.S.C. § 633a. *See also* 29 C.F.R. § 1614.201. A claimant wishing to proceed directly with a civil suit must give "not less than 30 days' notice of the intent to file such an action" to the EEO. 29 C.F.R. § 1614.201(a). In addition, this notice must be given "within 180 days of the occurrence of the alleged unlawful practice." *Id.*

In this case, Plaintiff has failed to meet the time limits imposed under either method. First, as discussed above, Plaintiff did not file his discrimination complaint within the 15–calendar day requirement under 29 C.F.R. § 1614.105(d), and failed to consult with an EEO counselor with respect to the later-raised hostile work environment claims. He has therefore failed to meet the criteria for filing a lawsuit under that provision. In addition, there is no evidence that Plaintiff complied with the notice provisions of 29 C.F.R. § 1614.201(a), and a direct suit cannot be brought under the ADEA. Plaintiff's 180–day period for giving notice to the EEO has long since passed, and he is thus barred from proceeding in a civil suit against the VA.

Plaintiff has not complied with the requirements for filing a lawsuit under the ADEA, it is therefore recommended that summary judgment be granted to Defendant on this count.

### 4.    HIPAA Violation Claim

Plaintiff alleges in the attachments to his Complaint and again in his Response Brief that his employer violated his HIPAA rights. *See* Compl. at p. 8 [Entry #1]; Resp. Br. at ¶¶ 6-7 [Entry #21]. This contention appears to be grounded in Plaintiff's claim that

on the day of his termination, a service manager and a law enforcement officer looked through a glass window into a room where Plaintiff was undergoing a medical examination. *Id.*

"[T]he weight of authority has held that there is no private right of action under HIPAA." *McKnight v. Surgical Assocs. of Myrtle Beach LLC*, No. 4:11-02782-RBH, 2011 WL 5869800, at *2 n.4 (D.S.C. Nov. 18, 2011) (citing *Suggs v. North Strand OB/GYN, P.C.*, No. 07–3911–TLW, 2009 WL 113445, at *5 (D.S.C. Jan. 14, 2009); *Williams v. Jones*, No. 9:07–CV–3437–MBS–GCK, 2008 WL 948285, at *1 (D.S.C. April 4, 2008); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007); *Acara v. Banks*, 470 F.3d 569 (5th Cir. 2006)).   The United States Department of Health and Human Services stated in its Final Rule for Standards for Privacy of Individually Identifiable Health Information that "[u]nder HIPAA, individuals do not have a right to court action." 65 Fed.Reg. 82601 (Dec. 28, 2000).

Because HIPAA has been held to afford no private right of action, it is recommended that Plaintiff's alleged HIPAA violation be dismissed.

### 5.    Defamation Claims

In the attachments to his Complaint, Plaintiff uses the words slander and libel apparently alleging that his employer made defamatory statements to third parties regarding his termination.  *See* Compl. [Entry #1 at pp. 7–8].  The VA terminated Plaintiff because on April 6, 2010, he told a veterans' service organization representative that he "knew why Timothy McVeigh did what he did."   [Entry #18-3].  Plaintiff

admitted in the narrative attached to his Complaint that he made the statement regarding Timothy McVeigh. [Entry #1 at p. 7]. Truth is an absolute defense to a defamation action. *Squirewell v. S.C. Dept. of Labor*, No. 3:10-1902-JFA, 2011 WL 4808260 (D.S.C. Oct. 11, 2011). Consequently, it is recommended that Plaintiff's defamation claims be dismissed.

## III.    Conclusion

For the foregoing reasons, the undersigned recommends the district court grant Defendant's motion to dismiss/for summary judgment and dismiss Plaintiff's complaint in its entirety.[5]

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 13, 2012                            Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[5] The scheduling order deadlines are suspended pending the District Judge's disposition of Defendant's motion to dismiss/for summary judgment.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).